Department of Energy Department of Energy Vessels The next case is number 05-1326, Ohio Company against Corrado Can Company. Mr. Menchaca, is that the pronunciation? That's correct, Your Honor. Okay. Good morning. May it please the Court, this appeal is strictly about claim construction. The main issues on appeal are the construction of three means-plus-function claim terms. Means to hold, means to extend, and means to empty. When properly construed, each of these claim terms should be understood to be a hydraulic cylinder assembly. The District Court erred in its claim... Well, that's... Some of it doesn't hold, doesn't extend, doesn't do all these things, and means-plus-function. And that'll be my whole presentation, and I'll start, for example, with the means-to-extend. The specification in column 7, lines 5 to 7, specifically states... specifically identifies a hydraulic cylinder assembly with the function of extending. It specifically states, figure 7B illustrates the extension of extendable arm 45 by activating cylinder assembly 50, which extends operating rod 53. So what we have here is claim construction. Let me give you an example of two possible meanings. We have the term means-to...  Turning to means-to-hold, well, let me finish with the means-to-extend. The District Court construed the term means-to-extend to include guide numbers. Guide numbers are for guiding, they are not for extending. Now, turning to the means-to-hold, and getting back to your question, when we're doing this claim construction, we have to take into account what the intrinsic evidence as a whole, including the patent as a whole, will teach to us. So let me give you a couple of examples. In the first example, I have a cup here, but let's assume that's a garbage can, and someone says to me, hold that garbage can. Well, I understand I must bring some tool, an engagement assembly perhaps, to engage the cup, and then I have to actuate the engagement assembly to hold the garbage can. I think you were grabbing. Grabbing? Okay, well, grabbing. But if I already have an engagement assembly engaging the cup, and someone says to me, hold that cup, I understand that all I have to do is actuate the engagement assembly. And if we take a look at the plain language of the claim, the term to hold sits in the element, engagement assembly having motor-powered means to hold. So from the plain language of the claim, we understand that it's the second example of my demonstration. We've already got an engagement assembly present, called for, and so all that's necessary is to actuate that engagement assembly to hold the garbage can. Let me ask you, as a preliminary matter, the case comes to us, I guess, because you consented to the entry of judgment based on the claim construction. That's correct. That's correct. And what I want to get a handle on is this, if I could. If we affirm on any one of those limitations, does that mean you lose? Or is your stipulation limited? The stipulation is limited, and it's the means to hold which drove the stipulation. Why wouldn't you lose, in fact, if you lose on one of the points? Because this is a meansless function, and so some of the structures used on the defendant's product may be either an equivalent under 112 paragraph 6 or may be an equivalent under the doctrine of equivalence. Here the district court, in connection with the means to hold, specifically construed that term to exclude a certain type of structure which is used on the defendant. He said there had been a disclaimer. I'm sorry? He said there had been a disclaimer. The district court said there had been a disclaimer, and that's really why. So you have two problems with the construction of the means to hold. Number one, you say the judge erred with respect to expanding it beyond the cylinder. Yes. Right. And number two, you say the judge erred in saying there had been a disclaimer on the subject matter. That's correct. And if the court agrees with the district court's construction of the phrase means to hold to mean an upper grabber, a lower grabber, and a double-lengthened cylinder, but disagrees with the disclaimer, we still have to go back to the district court to address the equivalence issue. So the only way the case would end is if we agreed with the judge on both points. That's correct, Your Honor. Now, where is the disclaimer in the appendix? I'm sorry, not the disclaimer. Where is the stipulation in the appendix? It's appendix page 1 of the final judgment order, and the parties have put in there their stipulation. Okay. The judgment states that Charlie funds the stipulation as far as that prevent a corrido plan for a non-infringed of the means to hold. Okay. If I may continue now, I just got through saying that if we look to the plain language of the claim, we see the term to hold appears in the element engagement assembly, having more departments to hold. And so I submit that it's the second example of my earlier demonstration. Now, let's take a look and see what the district court did. The district court didn't expressly construe the term to hold, but we can figure out the district court's understanding of that term by working backwards. The district court construed the term means to hold to be an upper grabber, a lower grabber, and double-acting cylinder. Is your best argument on this limitation, the disclaimer point? Because, I mean, I looked it in. I mean, I'm hard-pressed to see how the court erred on saying that the upper grabber and the lower grabber were structured here for the means to hold. But I'm wondering what thoughts you have on the disclaimer point. Well, I can skip to the disclaimer, but I'd really love to get back to this eventually. And on the disclaimer issue, the district court first of all has to say, listen to the judge and answer the question. That's correct, and that's why I'm doing it. The reason is I'm saying I'm inclined to think that the judge got it right on the point you were discussing with Judge Lord. But I would like to hear what you have to say on the disclaimer point. Yes, the district court judge construed the term means to hold to be an upper grabber, a lower grabber, and a double-acting cylinder. And based on that construction, the district court said, well, there's some goings-on in the prosecution history that demonstrates a disclaimer. She relied on Application Claim 10 for a parent application, which made specific reference to a grabber assembly. The term grabber assembly appears nowhere in the claims as issued. That term grabber assembly was expressly deleted from the claims as issued by the applicant. So first of all, to go ahead and find a disclaimer based on different language in an earlier application claim from the parent application with a term that doesn't even appear in the claims here would be to undo what the applicant specifically did during the prosecution. But it wasn't a specification. It wasn't a specification. That's correct. But second, in the continuation application during the prosecution, the examiner specifically applied some prior art references that had these wraparound arms, these grabber arms. And it was clear from the prosecution history— Are you talking about Bell or Kinkade or was it the wraparound ones? The up-dyke? Yeah, up-dyke. The prior art reference? Yes, the prior art reference. That's right. I'm talking about the up-dyke reference that had the wraparound arms. And the examiner specifically discussed the grabber assembly or the wraparound arms of the prior art reference as having application to the claims of the continuation application. And I think that very clearly demonstrates that neither the examiner nor the applicant understood there to be a disclaimer. The comments in connection with application claim 10 of the current application were specifically limited to that application claim and were not intended to pervade the entire prosecution through any following prosecution, especially when the term grabber assembly was explicitly deleted from the claims. Now, if I may return to my earlier discussion, and now I hope I'll be able to convince you that my claim construction is accurate. If we take a look at what the district court did, the district court construed the term means to hold to be an upper grabber, a lower grabber, and a hydraulic cylinder. If we take a look at the specification to identify the functions that those structures perform, we can get an understanding of what the district court's understanding of the term to hold was. So we take a look at the specification, and we see that the upper grabber and the lower grabber, the function of those is to engage. And that comes out of the specification at column 5, line 43, column 5, line 56, and column 7, lines 9 to 13. And the function of the double anchored cylinder or hydraulic cylinder assembly is to actuate the engagement structures. And that comes out of the specification at column 6, lines 39 to 46. So we see that district court understood the term to hold to mean to engage and to actuate. And I submit from the clear plain language of the claim itself that that can't hold. Now, turning to a proper claim construction of the term to hold, the claim, claim 1, has a pattern. It has a symmetry. It says dumping assembly having motor power means to empty. Engagement assembly having motor power means to hold. Extendable element having motor power means to extend. The means to extend, I believe, has already been very clearly identified as a hydraulic cylinder out of the specification. A person skilled in the art would understand that this symmetry, this parallelism, runs through the entire claim. And so it really should read dumping assembly having hydraulic cylinder assembly, engagement assembly having hydraulic cylinder assembly, and extendable element having hydraulic cylinder assembly. And I believe a person skilled in the art would see the symmetry and apply it the same way. But the same is true for the dependent claims as well. Dependent claims have a similar symmetry. And let me go back to my example. We can start with the two examples of my demonstration and take them to the logical conclusion in the dependent claims. And the one that's correct will give us the proper construction of the term to hold. So from my first example, we understand that the term to hold means to engage and to actuate. And we know from the district court's decision that the structures that perform the function of engaging are an upper grabber and a lower grabber. So if those specific structures are going to be found in the dependent claims, we would expect to see them associated with the means to hold. But they're not. We go down to Claim 7 and we see that those specific structures are, in fact, called out in Claim 7. And they're associated with the engagement assembly, not the means to hold. So that tells us that our first example of my demonstration is the wrong starting point. It's just like any experiment. You start out with a hypothesis. You take it to its logical conclusion and find out if it's right or wrong. Let's go to my second example where the claim term to hold means only to actuate because we've already got an engagement assembly. And now if the structures, an upper grabber and a lower grabber, are specifically identified in a dependent claim, then we would not expect to see them associated with the means to hold. And, in fact, that's correct. Dependent Claim 7 has those specific structures. They're associated with an engagement assembly and not with the means to hold. So that leads us to the conclusion that the term to hold should be construed to mean to actuate because that's the correct starting point. Now, going to the specification, another part of the intrinsic evidence, we see the same pattern. We see the pattern, for example, in Columns 6 lines 39 to 46 where the patent applicant describes the main components and the structures that drive those components, hydraulic cylinder systems. And we see throughout the patent that the applicant is describing this pattern of a main component driven by a hydraulic cylinder assembly. And so it's not surprising that the claims are written the way they are, a dumping assembly having a means to empty. An engagement assembly having a means to hold. An extending element having a means to extend. It's the same pattern, a main component with a means, a mechanism for driving the component. It's consistent throughout the claims, throughout the dependent claims and throughout the specification. And I'll stop there to reserve some time for questions. Okay. Thank you, Mr. Michalkos. Mr. Michalkos. Good morning. Despite the extensive briefing that has occurred in this case, the issues on this appeal, I think, are quite simple. There are two issues, identifying the structure that's necessary to perform the functions of extending, holding, and emptying. And the second is whether there is a disclaimer. In this crowded art field, and I think you can see how crowded this field is by looking through the prosecution history, Heil, despite that, still wants very broad claims. But as Heil admits, the inventor claimed much of its invention in means plus function language, as was, I think, required by the PTO during this lengthy prosecution. As a result, Heil is limited to the structure that set forth in the specification and the equivalents. To understand why Heil wants broad claims, I think it's important to have a good understanding of how this device really operates because of the posture of the case. We don't have a lot of evidence. We didn't prevail on some re-judgment. Some re-judgment was stipulated. There's not a lot of evidence of how this device is supposed to work. Figure 7 of the 245 patent, which is on appendix page 246, describes how this device works. And I think there's a copy of the patent attached to Pellan's brief as Exhibit C. First thing that this diagram does not show is when an operator of this device pulls up to a curbside container, he or she first has to look to see whether the can is properly aligned on the street so that the grab bars are parallel to the curbside itself. If the customer left it askew, the operator has to get out of the truck, align the can so that the bars are parallel, and then get back into the truck and start the operation of engaging this curbside container. In 7A... These containers are made specifically to mate with this intermediate container. Exactly. In other words, you have to have a curbside container that was made with the invention in mind. Exactly. And that's one advantage of a wrap-around grabber mechanism where it doesn't make any difference how the can is allocated. You pick it up, and then you dump it. And that's it. So here, in 7A, what you have to do is adjust the intermediate container to a certain height level where when the engagement assembly extends out, it has to rest in between these two grab bars on the can. And that's shown in 7B, where the engagement assembly has gone out. Then, the entire intermediate container has to be dropped so that the lower grabber engages the lower grab bar on the can itself. Then, you have to actuate a cylinder which would enable the upper grabber to grab onto the upper grab bar of the can itself. And that occurs in 7C. In 7D, what you see is the can itself lifted off the ground. How did that happen? The entire intermediate container had to be raised. And the reason why you have to raise it is you don't want to scrape the garbage can along the cement because it's going to wear out. So once it's lifted, then you have to pull the can back in through a hydraulic cylinder. There's another cylinder which activates the can followers in the cans and the tilt plate so when the can is taken into the intermediate container, it tips, dumps the contents, and then this whole process, this long process that I just discussed, is reversed. Now, the reason why I'm bringing this up is this is a very complicated, convoluted device. Heil never made this device. It has not been in production whatsoever. And if you have a device... That's not relevant, though, is it? Pardon me? That's not relevant. In my opinion, it's relevant because if a device is invented in a very private art field that is very complex, out of fairness, that invention is not entitled to a wide scope of protection. I look at things simply. Both parties agree that motor-powered means to empty, to hold, and to extend are means plus function limitations, but as Mr. Michalka stated, we disagree on what the functions are. Heil always tries to slip in the word actuates into the function language. Heil would like the claim to read motor-powered means to actuate, the holding, emptying, or extending process. And as Judge Chesney indicated, in her opinion, Heil wishes to rewrite the claims to read motor-powered means to supply power, and to hold, and to empty, and to extend. The topic of discussion is that all these means, the structure consists of this syllabus. Right. Would you like to respond and indicate why that's not so? As I think that Your Honor indicated earlier, you cannot hold anything with just merely a cylinder. You need some sort of an engagement assembly in order to hold onto it. It's the same way with respect to emptying. You cannot empty a curbside container with a mere hydraulic cylinder. And finally, you cannot extend without having some sort of guide supports, as is set forth in the 245 patent, to make sure that this heavy engagement assembly just doesn't simply fall off. The guide members not only provide... He's not saying that those are absent. He's saying that what's used in the accused's device is the same or equivalent. Well, the equivalence is, I think, an issue that would deal with the question of infringement. So we're not, I don't think, addressing that issue here today. This is merely claim construction. Claim construction of a means clause means that it's a structure in the specification or an equivalency. That's part of the claim construction. They are entitled to equivalence under Section 112, Paragraph 6. Yes. But the judge held on one limitation. They weren't. With respect to what? Because they weren't entitled to their 112-6 limitation on the means to hold. Right. Because of disclaimer during the prosecution of the 488 application. Right. What is your point on that? As I understand it, Mr. Hachaka argues that the judge erred in the disclaimer ruling because you had a different claim in a different application. And for that reason, that was Claim 10 of the 488 application. Here we're talking about Claim 1 of the 245 patent. Yes. The 245 patent. And Mr. Hachaka says, look, different patents, different claims, different substance for the claims. Well, it's a paired application to begin with. So I think there is considerable relevance there. And more importantly, the claims— Well, you need more than relevance. And you have to have a—I think we are—there has to be a clear disclaimer. Our cases seem to say that. Right. And we do believe that there is a clear disclaimer because the language in the prosecution history— First off, Hile was overcoming a patentability rejection that was based upon the George reference in view of Bell, which contained the wraparound grabber. In overcoming this rejection—and this is on page A314 of the appendix—Hile omitted its claim by adding first and second grabbers and then stated in conjunction with this, Bell, et al., does not disclose, suggest, or teach a first and a second grabber, which are movable, to engage an upper and lower grab bar on a refuse container. Bell, et al., discloses devices having clamping arms, which are open and closed around a trash container. Do you use clamping arms? Do we? Does Parada? Yes. It uses a wraparound grabber, which is very efficient. And not only is this prosecution history important, but there's also references in the specification, which Judge Chesney— What's the difference between a clamping arm and a grabber? Pardon me? What's the difference between a clamping arm and a grabber? Well, grabber is probably a broader term in some respects, but clamping means a wraparound clamp. As you're wrapping your hands around the glass? Yes. I'll just note that for the record. Okay. It looks like you're grabbing it as well. Well, I'm grabbing it, but I think we have to look at the terms in the context of the specification itself. We're dealing with means plus function limitations, and as a result of 112, paragraph 6, we've got to look to the specification. Is the distinction that you're drawing, asking us to draw, is the upper and lower distinction as to the components of the grabber? No. The specification of the 425 patent discusses the upper grabber and the lower grabber, which hooks into the bars that are in the trash can itself. I was asking if that's the distinction that you're asking us to draw. The distinction is between that type of mechanism and the wraparound grabber of Bell, which is a prior art reference that the Patent Office cited on numerous occasions throughout this prosecution history, that wrapped around it had two arms that come up and wrap around the container itself and then pick it up in this fashion. So if it were upper and lower but also wrapped around, then you wouldn't draw a distinction? Are you saying all on the same device? Yeah. That it had two bars, and in addition to the upper grabber and the lower grabber, that there was a wraparound device as well? I'm trying to understand your position as to what was disclaimed. What was disclaimed is the wraparound mechanism of Bell, and that's what Judge Chesney indicated in her claim construction, which is the equivalence thereof does not include a motor power means to hold, consisting of clamping arms that open and close around the trash container. And to get back to Judge Schall's point concerning the disavowal, there's also references in the specification here, in addition to the prosecution history, that also show that there has been a disavowal. Piled, as in the Astrin-Zanaka case, which says, when the general summary or description of the invention describes a feature of the invention and criticizes other products that lack the same feature, this operates as a clear disavowal. But the judge really hung her hat, if you will, I think, on the prosecution history, correct? Right. You make this argument, but it seems the focus of the judge's disclaimer ruling was on the prosecution history. I do. I think her result is correct, but this court is looking at the issues of claim construction anew. You're saying this also supports it? This also supports it. This is something else that this court can rely upon in finding that there's a clear disavowal. And in column one, lines 43 to 47, the inventor stated, when mechanical devices are used to dump the containers, larger cans may be used, requiring only a single transfer of refuse at each stop. However, these mechanical devices, usually consisting of arms which close around the container, are very expensive and require specialized vehicles. So you have the denigration of the prior part. You have the denigration of the wraparound device. And Heil also touted its grabber assembly. In column two, lines 33 to 35, the inventor states, and a further object of the present invention, is to provide a new and improved, presumably over the prior art, grabber assembly for refuse collection devices. That doesn't say anything about construction? Pardon me? You're saying I've made an invention. Isn't that all that that says? No. In my opinion, a person of skill in the art would look at that and say that one of the objects of the invention, and an object is a very important aspect of the patent, one of the objects is to claim a new and improved grabber assembly for refuse collection devices. And when you couple that statement with the previous statement denigrating the wraparound grabbers as being expensive and requiring specialized vehicles, the two of them coupled together would indicate that there has been a disavowal. And you couple that with the prosecution history statement as well, you have, in my opinion, a clear disavowal under either the clear and unmistakable standard or the standard that has been discussed in some cases involving what a person of ordinary skill in the art would think. And I think it's important for the court to note as well, and this is in connection of whether the parent statements made during the prosecution of the parent should be used in interpreting the claims of the continuation. This has been a very lengthy prosecution history. It involved many office actions, many rejections, many amendments, and all 800 pages of this prosecution history is focused on having the applicant, the patentee, limit the scope of his claims. When you say 800 pages, you're adding the pages for the various applications, or are they all included? In terms of including all the prior art references and so on, because of the prior art references, the patent office had to limit the scope of the claims, which is what it did. And finally, when the patentee took the approach of limiting its claims through means plus function limitations, that's when the patent office finally allowed some claims. Thank you. Our instruction is simple and straightforward, and we certainly request that this court confirms. Thank you, Mr. McTavis. First, I'll address Mr. McTavis' argument that the specification has a disclaimer, and I want to point out, for example, in the specification column one lines at about 49 to about 53, where it states specifically that it's the trucks that are used to grab a container off the road and dump it into the main storage container of the garbage can that is being criticized, not wrapped around arms. And now I want to get back to Judge Schall's earlier comment, inclined to agree with the district court on this term to hold. I think that one of the main failings of Corrado and of the district court was that there is no construction of the term to hold. So before we can say we're inclined to agree with the district court, we have to actually construe the term to hold separately and do that first. And that was what I was trying to do earlier with an analysis of the term to hold in connection with the claim in which that term appears with all the pending claims and with the specification. Mr. McTavis, let me ask you, if we think – we're talking now about that means to hold limitation. Yes. Assume for the moment one would think the district court properly construed the term. Yes. Disagrees with you on that point, but thinks the judge erred with respect to the disclaimer issue. Now, under that circumstance, what would have to happen? Would we have to send it back, and you would have to try and establish for the district court that the accused – the Corrado, is it Siroto? Corrado. The Corrado device is a 112.6 equivalent, correct? Either that or a doctrine of equivalence. That's what you would have to – That's correct. But I still want to emphasize the point that I believe under a proper construction of the functions here, which is the first step of construing any means dysfunction claim element, under a proper construction of each of the functions, we can see that each of the functions really means to actuate the main assembly because the main assembly is already there. When Mr. McTavis was making his presentation, he agreed an engagement assembly is necessary to engage this. But I submit, and Kyle submits, that the claim language already provides for an engagement assembly. The claim specifically states engagement assembly having motor power means to hold. So Kyle's position is that each of the functions is to hold. And one point that Mr. McTavis made was that this is a very crowded field, and this patent is entitled to no broad construction. Kyle's not seeking a broad construction. Kyle's only seeking the construction to which it's entitled under the proper claim construction rules and to limit it to how this is described in the specification. Thank you very much. Thank you, Mr. Inchaco and Mr. McTavis. The case is taken under submission. All rise.